THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FULLTIME FANTASY SPORTS, LLC,

                Plaintiff,

    v.

BRANT TEDESCHI, *et al.*,

                Defendants.

CASE NO. C22-0295-JCC

ORDER

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's complaint (Dkt. No. 21). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I.   BACKGROUND[1]

In April 2019, Plaintiff and Defendant Vibrant Web Limited Liability Company d/b/a Fantasy SP ("FSP") agreed to a Binding Term Sheet[2] ("Term Sheet"). (Dkt. No. 1 at 2.)

---

[1] The Court accepts Plaintiff's account of the facts for purposes of this order.

[2] Defendants FSP and Tedeschi ask the Court to consider the Term Sheet because the complaint relies on it and cites to it repeatedly. (Dkt. No. 21 at 7.) Plaintiff does not object. (Dkt. No 23 at 3.) The Court may incorporate by reference any document "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002).

According to the Term Sheet, Plaintiff agreed to "purchase all assets of [FSP] in an asset sale." (Dkt. No. 21-1). In addition, Defendant Brant Tedeschi ("Tedeschi") agreed to sign a three-year agreement to work with Plaintiff as an independent contractor. (*Id.*; Dkt. No. 1 at 2.)  The Term Sheet also states that Tedeschi would receive $200,000 upfront payment as a "signing bonus" and $50,000 for purchase of FSP's assets. (Dkt. No. 21-1.) After signing the Term Sheet, Plaintiff began to pay Tedeschi $10,000 each month. (Dkt. No. 1 at 2.)

For the next four months, Tedeschi performed under the contract. (*Id.* at 3.) He gave Plaintiff logins and passwords for all of FSP's assets and granted Plaintiff administrative access to the FSP domain name, www.fantasysp.com. (*Id.*) All FSP revenue accounts from subscription and revenue were also turned over to Plaintiff. (*Id.*) Tedeschi also updated FSP's financial accounts to direct payments to Plaintiff. (*Id.*) Plaintiff granted Tedeschi access to its credit cards to pay vendor bills related to FSP's assets. (*Id.*) In addition, Plaintiff asked Tedeschi to build a Mock Draft contest and practice simulator ("Simulator") for Plaintiff's use. (*Id.*) The Simulator was integrated into the FSP platform in June 2019. (*Id.*) On August 5, 2019, the parties released a press release announcing Plaintiff's acquisition of FSP. (*Id.*)

On November 25, 2019, Plaintiff signed a letter of intent ("Maven LOI") with Maven, Inc. ("Maven") agreeing to sell substantially all of its assets, including FSP's assets, in exchange for cash and Maven stock units. (*Id.* at 3–4.) Under the terms of the Maven LOI, the deal was to be consummated on December 31, 2019. (*Id.* at 4.) As a condition of the Maven LOI, all of Plaintiff's independent contractors, including Tedeschi, were required to sign an employment agreement with Maven. (*Id.*) On or around December 1, 2019, Tedeschi signed his Maven employment agreement. (*Id.*) On December 3, 2019, Tedeschi delivered Plaintiff a "Roadmap" outlining the "overall tech plan for 2020." (*Id.*)

After closing the Maven LOI, Maven directed Tedeschi to integrate Plaintiff's assets,

The Court will consider the Term Sheet as incorporated by reference in the complaint. (*See* Dkt. No. 22-1.)

including FSP's assets, into the Maven platform. On January 28, 2020, Plaintiff authorized the transfer of the domain www.fulltimefantasy.com ("Fulltime Domain") to Tedeschi so that he could begin the integration process and strengthen the security features of the Fulltime Domain. (*Id.*) Around February 26, 2020, Plaintiff paid Tedeschi $29,822 as a bonus for his work in 2019 ("2019 Bonus") as owed under the Term Sheet. (*Id.* at 5.)

On April 15, 2020, Tedeschi sent Maven an e-mail explaining his plan to migrate tools owned by Plaintiff to the FSP platform, before moving the FSP platform to a domain owned by Maven. (*Id.* at 4.) Around April 17, 2020, Plaintiff paid Tedeschi $100,000, of which Plaintiff alleges $50,000 was payment for FSP's assets and $50,000 was partial payment of Tedeschi's signing bonus. (*Id.* at 5.) In June 2020, Plaintiff and Maven began to negotiate an asset and purchase agreement ("Maven APA"). (*Id.* at 5–6.) Around that time, Plaintiff and Tedeschi also began to negotiate an asset and purchase agreement for the purchase of FSP's assets ("FSP APA"). (*Id.* at 5.)

In July 2020, at Tedeschi's request, Plaintiff paid an outside contractor $32,000 to integrate the FFToolbox Customized Rankings tool, owned by Plaintiff, into the FSP platform. (*Id.* at 4.) Around that time, Tedeschi also migrated Plaintiff's customer information and subscribers to the FSP platform in preparation for the larger migration to the Maven platform. (*Id.* at 5.)

In September 2020, The FSP APA was substantially finalized but was never signed because some terms would be affected by the not-yet-finalized Maven APA. (*Id.* at 6.) On October 12, 2020, FSP demanded additional consideration from Plaintiff, but Plaintiff refused to renegotiate. (*Id.*) Shortly thereafter, Tedeschi fired his legal counsel and refused to negotiate anymore regarding the FSP APA. (*Id.*)

Over the next few weeks, Tedeschi took action to block Plaintiff's access to its accounts. (*Id.*) Plaintiff alleges it did not receive expected deposits for advertising costs and membership revenue. (*Id.*) Plaintiff learned from its payment processor that Tedeschi rerouted the funds to a

different bank account. (*Id.*) Plaintiff alerted Maven of these payment issues, who took steps to regain access to the various FSP accounts. (*Id.* at 7.) Tedeschi ignored all communications from Plaintiff and Maven. (*Id.*) Around December 14, 2020, Maven terminated Tedeschi's employment. (*Id.*)

After Maven terminated Tedeschi, Plaintiff reached out multiple times over the next few weeks requesting the return of the Fulltime Domain. (*Id.*) Tedeschi replied that he would do so after he returned from traveling. (*Id.*) After Plaintiff's subsequent request, Tedeschi admitted that he had seized control of the Fulltime Domain. (*Id.*) Following this incident, Plaintiff and Maven revised the Maven APA to remove all references to FSP's assets. (*Id.*) Additionally, Maven elected not to purchase most of Plaintiff's assets, many of which had been migrated to the FSP platform and were in Tedeschi's control. (*Id.*)

On August 16, 2021, Plaintiff sent another letter to Tedeschi, requesting the return of the Fulltime Domain and asking for a settlement payment of $150,000 and the removal of Plaintiff's customer information from the FSP website and FSP e-mail or distribution lists. (*Id.*) Tedeschi responded the next day, offering to return the Fulltime Domain upon the execution of a mutual release agreement. (*Id.* at 8.)

In March 2022, Plaintiff filed a complaint against FSP and Tedeschi, alleging breach of contract, negligent misrepresentation, fraud, conversion, tortious interference, unjust enrichment, and alter ego / manager liability. (Dkt. No. 1.) Defendants FSP and Tedeschi move to dismiss, arguing Plaintiff fails to state any claim upon which relief can be granted. (Dkt. No. 21.)

## II.   DISCUSSION

### A.   Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678. When reviewing a Rule 12(b)(6) motion, the Court accepts factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of the nonmovant. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Id.*

**B.     Choice of Law**

Federal courts sitting in diversity must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The contract at issue does not contain a choice of law provision. In Washington, courts apply the law of the state with the most significant relationship for contracts and torts claims. *Johnson v. Spider Staging Corp.*, 555 P.2d 997, 1000 (Wash. 1997) Here, the parties conducted business related to the conflict at issue entirely in Washington. (Dkt. No. 1 at 2.) Thus, the Court will apply Washington law to the contract and tort claims.

**C.     Breach of Contract**

Plaintiff alleges Defendants breached the Term Sheet by failing to transition FSP assets to Maven and by retaining those assets contrary to the contract's terms. (Dkt. No. 1 at 9.) To bring a breach of contract claim, Plaintiff must show that the contract imposes a duty, a breach of the duty, and the breach proximately caused Plaintiff's damages. *Nw. Indep. Forest Mfrs. v. Dept. of Lab. and Indus.*, 899 P.2d 6, 9 (Wash. Ct. App. 1995). When interpreting a contract, the intention of the parties controls, intent is ascertaining from reading the contract as a whole, and ambiguity will not be read into the contract where the language used is unambiguous. *Felton v. Menan Starch Co.*, 405 P.2d 585, 588 (Wash. 1965). A court should only turn to extrinsic evidence if ambiguity exists. *McDonald v. State Farm Fire & Cas. Co.,* 837 P.2d 1000, 1003 (Wash. 1992).

Defendants argue Plaintiff's claim should be dismissed because the only obligation in the Term Sheet pertaining to Defendant Tedeschi is that he will sign a three-year employment agreement with Plaintiff. (Dkt. No. 21 at 12.) Defendants contend that all of Plaintiff's remaining

allegations have no basis in the Term Sheet. (*Id*.) Plaintiff counters that the Term Sheet requires the parties to "move forward as one business" and that under the terms, it is presumed that Defendant FSP will sell all of its assets. (Dkt. No. 23 at 10.) Defendants reply that the Term Sheet only required the parties to act as one business "until closings" and argue that the Term Sheet says *Plaintiff* will purchase assets but says nothing about Defendants' obligations. (Dkt. No. 24 at 3–4.)

Plaintiff has pleaded sufficient facts to support this claim. Plaintiff asserts that Defendant Tedeschi redirected its website to a URL only he controls and that he redirected various financial deposits to separate bank accounts. (Dkt. No. 1 at 3,6.) Accepting Plaintiff's version of the facts as true, and drawing reasonable inferences in favor of Plaintiff, there is a plausible claim for breach of contract.

Defendants also argue Plaintiff cannot claim a breach of contract because Plaintiff breached the Term Sheet. (Dkt. No. 21 at 13.) Defendants contend that by failing to make a $200,000 payment as required by the Term Sheet, Plaintiff was in material breach which precludes it from bringing any breach of contract claim. (Dkt. No. 21 at 14.) However, Plaintiff alleges in the complaint that it did make a payment in fulfillment of the terms of the Term Sheet. (Dkt. No. 1 at 5.) That alleged fact alone, accepted as true for purposes of this motion, defeats Defendants' argument here. Moreover, determining whether a breach was material is an issue of fact. *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 550 (Wash. Ct. App. 2014). This is not the proper stage to determine if a material breach precludes Plaintiff from bringing a claim for breach of contract.

Thus, the Court DENIES Defendants' motion to dismiss Plaintiff's breach of contract claim.

### D.   Negligent Misrepresentation and Fraud

Plaintiff also alleges Defendants fraudulently or negligently misrepresented facts that affected Plaintiff's business transactions. (Dkt. No. 1 at 9–10.) Fraud requires: "(1)

1   representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its

2   falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's

3   ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's

4   right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 925 P.2d 194,

5   204 (Wash. 1996). Negligent misrepresentation requires that: "(1) the defendant supplied

6   information for the guidance of others in their business transactions that was false, (2) the

7   defendant knew or should have known that the information was supplied to guide the plaintiff in

8   his business transactions, (3) the defendant was negligent in obtaining or communicating the

9   false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was

10  reasonable, and (6) the false information proximately caused the plaintiff damages." *Ross v.*

11  *Kirner*, 172 P.3d 701, 705 (Wash. 2007).

12      Under Federal Rule of Civil Procedure 9(b), all circumstances constituting fraud or

13  mistake must be stated with particularity. To meet this heightened pleading standard, the

14  complaint must state "the time, place, and specific content of the false representations as well as

15  the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well*

16  *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

17      Defendants argue Plaintiffs fail to detail any fraudulent or negligent misrepresentations.

18  (Dkt. No. 21 at 16.) Defendant also argues Plaintiff's claim improperly relies on an alleged

19  future promise which cannot be the basis for a claim of misrepresentation. (*Id.* at 18.)

20      The Court agrees that Plaintiff has not properly pled a claim for fraud or negligent

21  misrepresentation. Plaintiffs ask the Court to read between the lines of the complaint to infer

22  there was a misrepresentation based on Defendants' actions. (*See* Dkt. No. 23 at 17.) But

23  Plaintiff does not state with particularity any facts in the complaint that directly show a

24  misrepresentation. (*See generally* Dkt. No. 1.) The Court GRANTS Defendants' motion to

25  dismiss Plaintiff's claims for negligent misrepresentation and fraud.

26      However, because the Court cannot conclude that the pleading cannot be cured by the

1    allegation of other facts, the Court GRANTS Plaintiff leave to amend its complaint to plead the

2    claims of misrepresentation with sufficient particularity. *See Lopez v. Smith*, 203 F.3d 1122,

3    1127 (9th Cir. 2000).

4         **E.    Conversion**

5         Plaintiff alleges Defendants wrongfully deprived Plaintiff possession of its assets and

6    continues to do so. (Dkt. No. 1 at 10.) Conversion requires willful interference with one's

7    property, by either taking or unlawful retention, thereby depriving the owner of possession.

8    *Burton v. City of Spokane*, 482 P.3d 968, 970 (Wash. Ct. App. 2021). Defendants argue Plaintiff

9    fails to do more than restate the elements of the claim. (Dkt. No. 21 at 20.) But Plaintiff alleges

10    multiple instances where Defendant Tedeschi withheld or diverted its assets. (Dkt. No. 1 at 3, 6–

11    8.) The Court DENIES Defendants' motion to dismiss the claim of conversion.

12         **F.    Tortious Interference**

13         Plaintiff alleges Defendants had knowledge of the Maven LOI and intentionally

14    interfered with the objective of forcing Plaintiff to renegotiate the Term Sheet and provide

15    additional consideration. (Dkt. No. 1 at 11.) To plead tortious interference, a plaintiff must show:

16    "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants

17    had knowledge of that relationship; (3) an intentional interference inducing or causing a breach

18    or termination of the relationship or expectancy; (4) that defendants interfered for an improper

19    purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cty. Med.*

20    *Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

21         Defendants argue Plaintiff has alleged no facts supporting the claim that Defendant

22    Tedeschi had knowledge of the Maven LOI or Maven APA. (Dkt. No. 21 at 20.) The Court

23    agrees with Plaintiff that the fact that Defendants had knowledge of the Maven LOI and Maven

24    APA can be reasonably inferred from the facts alleged in the complaint. (Dkt. No. 23 at 14.)

25    Notably, Plaintiff alleges Defendant Tedeschi was required to sign an employment contract with

26    Maven and to integrate FSP's assets into the Maven platform. (Dkt. No. 1 at 4.)

1    Defendants also argue Plaintiff fails to plead any facts supporting the claim that

2 Defendants' intentional interference caused the termination of Plaintiff's relationship with

3 Maven. (Dkt. No. 21 at 21.) But Plaintiff alleges Defendant Tedeschi diverted assets from

4 Plaintiff causing Maven to revise the Maven APA. (Dkt. No. 1 at 6–7.)

5    Finally, Defendants argue Plaintiff fails to plead any improper purpose or improper

6 means. (Dkt. No. 21 at 21.) They argue that Plaintiff cannot rely on any alleged breach of

7 contract because nothing was agreed to in the Term Sheet. (*Id.*) But as noted above, Plaintiff

8 alleges sufficient facts to uphold its breach of contract claim. This is sufficient to support its

9 claim that the Maven LOI fell through because of Defendants' breach of contract, which satisfies

10 the improper means prong. (Dkt. No. 1 at 5–7.)

11    Therefore, the Court DENIES Defendants' motion to dismiss the claim of tortious

12 interference.

13    **G.    Unjust Enrichment**

14    Plaintiff also alleges it conferred a benefit on Defendants when it performed on the Term

15 Sheet, and that Defendants unjustly retained that benefit without repayment. (Dkt. No. 1 at 11.)

16 Defendants argue Plaintiff cannot claim unjust enrichment because Defendant Tedeschi

17 performed his obligations under the Term Sheet. (Dkt. No. 21 at 23.) In the alternative,

18 Defendants argue the claim for unjust enrichment may be dismissed because the parties have a

19 contractual relationship. (*Id.*) However, Plaintiff has alleged facts that show Defendants received

20 benefits without payment. (Dkt. No. 1 at 3–5.) Although, Defendants challenge Plaintiff's factual

21 allegations, this is not the stage to consider factual disputes. Moreover, Plaintiff is entitled to

22 plead its claim of unjust enrichment in the alternative to its contract claim. *See* Fed. R. Civ. P.

23 8(d)(2).

24    For these reasons, the Court DENIES Defendants' motion to dismiss the claim of unjust

25 enrichment.

26

### H.    Alter Ego Liability and Manager Liability

Next, Plaintiff brings claims of alter ego liability and manager liability. (Dkt. No. 1 at 8.) As Defendants correctly note, these are not independent causes of action but mechanisms to attribute liability. (Dkt. No. 21 at 9.) The Court GRANTS Defendant's motion to dismiss the claims for alter ego liability and action-manager liability.

### I.    Injunctive Relief

Finally, Plaintiff brings a cause of action for injunctive relief. (Dkt. No. 1 at 12.) Defendants correctly note that injunctive relief is a remedy, not a cause of action. However, Plaintiff properly includes the request for injunctive relief in its request for relief. (*Id.* at 13.) Therefore, the Court will consider the request for injunctive relief as part of the request for relief and the motion to dismiss the claim for injunctive relief is GRANTED.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 24) is GRANTED in part and DENIED in part. The Court ORDERS as follows:

1.  Plaintiff's claims for negligent misrepresentation and fraud are DISMISSED without prejudice;

2.  Plaintiff's claims for alter ego liability, manager liability, and injunctive relief are DISMISSED with prejudice;[3]

3.  Within fourteen (14) days of this order, Plaintiff may amend the complaint to (a) plead the claims of negligent misrepresentation and fraud with sufficient particularity, (b) incorporate the allegations of alter ego liability and action-manager liability into the surviving causes of action, and (c) move the claim for injunctive relief to the request for relief. No further amendments may be made without additional leave from the Court.

---

[3] Although the Court dismisses these stand-alone claims with prejudice, Plaintiff is granted leave to amend the complaint to incorporate these requests for relief as indicated below.

DATED this 14th day of October 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE